291 P.2d 205

Wilson R. BLAND, State Post Auditor, Petitioner,

v.

Jewel W. JORDAN, State Auditor, Respondent.

No. 6144.

Supreme Court of Arizona.

Dec. 7, 1955.

Darrell R. Parker, Phoenix, for petitioner.

Robert Morrison, Atty. Gen., and W. T. Willey, Sp. Asst. Atty. Gen., for respondent.

LA PRADE, Chief Justice.

This court at the instance of petitioner Wilson R. Bland, post auditor, issued an alternative writ of mandamus directed to respondent Jewel W. Jordan, state auditor, to accept and allow petitioner's salary claim for the last half of July, 1955, upon the basis of a salary of $8,400 per year, or show cause for not so doing. Respondent by her return to the writ admitted that she had refused the claim upon the basis requested but had offered to accept the claim upon the basis of a salary of $7,200 per year, her position being that the applicable salary for the office of post auditor is $7,200 per year for a four-year term beginning July 1, 1955.

■ Petitioner was appointed to the office on July 15, "at a salary of $8,400 per annum, this appointment to begin July 16, 1955, to expire July 15, 1959 (Succeeding Kenneth D. Lockwood)". Petitioner claims that the salary of post auditor was the sum of $8,400 per year as fixed by Chapter 138, Laws of 1955, which was approved by the governor and filed in the office of secretary of state on the 13th day of April, 1955. This Act contained the usual emergency clause but failed to receive the necessary number of votes to pass as an emergency law and as a consequence became operative as an ordinary law on July 3, 1955, which was ninety days after the adjournment of the legislature. State ex rel. LaPrade v. Cox, 43 Ariz. 174, 179, 30 P.2d 825. The office of post auditor was created by Chapter 28, Laws 1950, 1st S.S., Sections 10–940, 10–947, 1952 Code Supp. By Section 10–946 it is provided that

"The term of office to which the first post auditor is appointed shall commence on the first day of July, 1950, and shall expire on the 30th day of June, 1955, and thereafter the term shall be for four (4) years."

Section 10–947 fixed the salary and reads:

"The post auditor shall receive a salary of not to exceed $7,200.00 per annum."

■ Bland asserts that the 1955 amendment fixing the salary at $8,400 became operative July 3, twelve days before his appointment took effect, and that the term to which he was appointed began on July 16, 1955, and continued to July 16 four years distant. The auditor's position as to this particular contention is that the term to which he was appointed began on July 1, the first day after the ending of the first term, and that his appointment was in fact for the unexpired portion of the term. This contention is correct, being in conformity with our holding in Clark v. Frohmiller, 53 Ariz. 286, 88 P.2d 542. She then contends that the statutory salary of $7,200 being affixed to the term which began on July 1 could not be increased on July 3 during the term, citing article 4, pt. 2, § 17 of the Arizona Constitution providing that the compensation of a public officer shall not be increased *"during his term of office"*.

Considering that this salary increase law was enacted before the beginning of the term, does the fact that the operative date of the amendment was after the term began, bring petitioner within the inhibition of the constitutional provision prohibiting an increase in compensation during his term of office? The correct answer to this question is determinative of this proceeding.

Under the decisions of this court and others having like constitutional prohibitions against salary increases during a term, it appears that the constitutional prohibition does not positively prohibit all such salary changes. In County of Yuma v. Sturges, 15 Ariz. 538, 140 P. 504, 506, it was held that the Yuma County treasurer

was entitled to receive a salary increase during his term of office. Prior to his taking office the law provided that the salary of the county treasurer was dependent upon the assessed valuation of the property in the county. The assessed valuation at the time he took office authorized a salary of $2,200 per year. Later during his term the assessed valuation increased so as to permit a salary at the rate of $2,500 per year. Upon the happening of this contingency the treasurer demanded the increase in salary which was refused on the constitutional ground here asserted. This court held that the increase was allowable

."* * * Not by virtue of any subsequent legislative action, but solely by the automatic operation of the very law in effect at the beginning of the term, and which law definitely prescribed and fixed the compensation incident to the office, the amount thereof being graded according to the determination of an extraneous fact, to wit, the fact of the equalized assessed valuation."

The holding and reasoning in our case of Moore v. Frohmiller, 46 Ariz. 36, 46 P.2d 652, 656, is relevant to the instant problem. In that case Tax Commissioner Thad Moore sought a writ of mandamus to compel the issuance of a salary warrant at the rate of $4,500 per year, which was the salary attached to the office by law at the time he was elected and took office. The tax commission was composed of three officers, one elected every two years for a six-year term. Moore was elected in 1932. O'Neil was elected in 1934. In 1933, after Moore was elected but before O'Neil was elected, the legislature passed an Act reducing the salary of tax commissioner to take effect on January 7, 1935. O'Neil's term began on January 1, 1935, six days before the operative day of the reduced salary. If the salary reduction during a term was applicable to O'Neil it also applied to Moore by the provisions of article 4, pt. 2, § 17 of the Constitution, making a salary change applicable to all members of a court or board when applicable to any one of them. The court propounded this question and answered it in the affirmative:

"* * * Can the Legislature by an act adopted *before* the term of office of an officer commences provide for a salary change to take effect *after* such term has commenced without violating article 4, § 17, supra? * * *".

It was held that the effect of the Act reducing the salary

"* * * was to create a situation similar in principle to, though differing in form from, that which arose in Yuma County v. Sturges, supra; that is, that it provided for an automatic change in salary to take effect at a future fixed time instead of, as in the case just cited, upon the happening of a future possible contingency, and just as in that case we held that an increase in salary through the automatic opera-

tion of a law which had been adopted before Sturges took office did not violate the constitutional provision, so we think that in the present case the automatic operation of a law adopted before O'Neil took office, which caused a reduction in his salary thereafter, would not violate the same constitutional provision. * * *"

In this Moore case the legislature fixed the date which happened after the term began. In the instant case the constitutional provision, fixing the operative date of non-emergency acts, fixed the date for the operation of this Act.

■ This amended law fixing the salary of $8,400 was the *law* on and after the date the governor signed the bill and filed it in the office of the secretary of state, though not operative due to the absence of a legally enacted emergency clause. Dunbar v. Cronin, 18 Ariz. 583, 164 P. 447; State ex rel. La Prade v. Cox, supra.

The amended law authorizing the salary increase enacted before Bland's term began and operative after the beginning of the term, presents a legal problem not dissimilar to those considered in the Sturges and Moore cases, and on principle and reason is determinable with the same result. The salary attached to this office at the beginning of its term was definitely fixed by law to be operative on a certain day (in the absence of a demand for a referendum), not by virtue of any subsequent action on the

part of the legislature but solely by the automatic operation of the Act and the Constitution working together.

■ Such a holding does not violate the letter or the spirit of the constitutional provision prohibiting an increase or decrease in salary during a term. The purpose of the constitutional provision was meaningfully pointed out in the case of Castree v. Slingerland, 139 Misc. 632, 248 N.Y.S. 746, 747, quoted with approval in Moore v. Frohmiller, supra, where the court said:

"'* * * The purpose of this law is not only to protect the public against the evil of permitting a public official to use his official power and prestige to augment his own salary, but also to protect him against the equally unjust action of a reduction in his compensation by an unfriendly board having authority to fix the salary. This beneficent legislation removes from the lawmakers the temptation to control the other branches of government by promises of reward in the form of increased compensation or threat of punishment by way of reduced salaries. * * *'"

Applying the reasoning in the Sturges and Moore cases, and taking into consideration the purpose of the constitutional provision, leads us to the conclusion that the constitutional provision, article 4, pt. 2, § 17, presents no bar to the allowance of the increased salary.

389

The response showing no legal reason why the writ heretofore issued should not be made peremptory—it is so ordered.

UDALL, WINDES, PHELPS and STRUCKMEYER, JJ., concur.