688 P.2d 1005
**STATE of Arizona, Appellee,**

v.

**Jon Henry WEIBLE, Appellant.**

**No. 6143.**

Supreme Court of Arizona,
En Banc.

Oct. 3, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, and Jack Roberts, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Arthur G. Hazelton, Deputy Public Defender, Phoenix, for appellant.

HAYS, Justice.

Defendant Jon Henry Weible was convicted on October 18, 1983 of two counts of criminal trespass in the first degree, one count of aggravated assault and one count of armed robbery. The jury found that at the time these offenses were committed, the defendant was on parole from the state of Illinois. Defendant was also found to have previously committed the offenses of robbery and armed robbery.

The trial court sentenced Weible to two concurrent life sentences for the aggravated assault and armed robbery counts and two concurrent sentences of 4.5 years for the trespass counts. The court designated that the trespass sentences should run consecutive to the life sentences.

There are two issues on this direct appeal: 1) whether the trial court erred in giving a flight instruction that unfairly singled out evidence, and 2) whether the defendant's parole status was within the contemplation of A.R.S. § 13–604.01. This case is before us as a direct appeal pursuant to Ariz. Const. art. 6, § 5 and A.R.S. § 13–4031.

Hugo Nelson is 94 years old and in remarkably good health. It was Nelson's practice to go for leisurely walks after each meal. About 6:30 p.m. on the evening of May 29, 1983 Nelson went for his usual evening stroll. While walking through a neighborhood shopping center he was approached by a young man. The man confronted Nelson and said, "You're the one I want." He grabbed Nelson by the throat, stabbed him in the stomach with a buckknife and threw him to the sidewalk. The fall broke Nelson's jaw. The man took Nelson's wallet. Fortunately, Nelson survived.

From their car Chuck Osmond and Kathie May saw a man bend over Nelson. As they approached, the man ran. When they realized what had happened Kathie May called the police and Chuck Osmond went to help Nelson. They told the police that the assailant wore a red and white baseball cap, a baseball shirt and faded jeans. The

defendant, Jon Henry Weible, had just finished playing baseball at a nearby field.

A few minutes after the incident and about a quarter of a mile away, Officer Keeley of the Scottsdale Police Department saw a man fitting the description of the assailant. When the man saw Officer Keeley's police car he ran into a nearby apartment complex. Keeley called to the man to stop. Keeley got out of his car and chased the man. At one point Keeley drew his service revolver. Keeley noted the man wore a red-and-white baseball cap, a white tee shirt, jeans and had a buckknife case on his belt. The man was carrying a brown bag and a carton of soda pop. The man ran into the apartment of Teresa Green. Keeley called for assistance. When more police arrived, they went to the apartment, the man was gone, but the bag and soda remained. Teresa Green, Weible's girlfriend, was present in the apartment. She testified that Weible played baseball that day. He returned home, placed a brown bag and an 8-pack of Pepsi on the floor, locked the front door, and left through the back door.

In a neighboring apartment, about this time, the Contrells were in their bedroom when their back door flew open and a man entered. The man said, "Pardon me for barging in but my girl—girl friend's after me with a gun." The man ran out the front door. The Contrells watched as the man ran over to the Snyders' apartment. They later identified the intruder as Jon Henry Weible.

The Snyders were eating dinner when Weible entered their apartment. Weible came in the front door, repeating what he had said to the Contrells, and headed for the back door. Carroll Snyder intercepted the defendant and escorted him back out the front door.

At this point Officer Yturralde saw Weible in the area of the Snyder apartment. Weible was wearing a white baseball shirt, Levi's and had a buckknife case on his right hip. The missing red-and-white baseball cap was later turned in by a neighbor. Yturralde watched Weible's movements.

He lost sight of the defendant when the Contrells and Snyders approached him to explain what had happened.

Several minutes later, a young woman asked Officer Yturralde if he was looking for her brother. Yturralde asked her what her brother was wearing. She told him he was wearing a blue tank top and Levi's; Yturralde said he was looking for someone else.

A short time later, a different woman called to Yturralde saying, "Jon's in here." Yturralde and another officer went to this woman's apartment. Weible's family members were outside the apartment. Yturralde asked the woman to have her brother step outside. When Weible came out he was wearing a blue tank top and very baggy Levi's. The pants were so baggy that Weible had to hold them up with his hands. Weible was crying, yelling and hiding behind his sister. His sister told the police, "He's real afraid of the police; you have to understand this." During this time, Milan Norum, another resident of the apartment complex, approached and gave the officers a red-and-white baseball cap he found in the patio area of a neighboring apartment. Weible was arrested the next day.

Defendant first asserts that the flight instruction was in error because 1) the evidence adduced at trial did not support the giving of the instruction, and 2) the instruction was overbroad in that it unfairly singled out specific evidence. The instruction read as follows:

> Running away or hiding after a crime has been committed does not in itself prove guilt. However you may consider any evidence of the defendant's running away, concealment, change of clothing or physical appearance, false exculpatory statements or concealment or destruction of evidence, together with all other evidence.

■ In this case there was abundant evidence to warrant a flight instruction. Flight or concealment after a crime is admissible because it bears on the issue of the defendant's consciousness of guilt.

*State v. Owen,* 94 Ariz. 404, 385 P.2d 700 (1963), *vacated on other grounds,* 378 U.S. 574, 84 S.Ct. 1932, 12 L.Ed.2d 1041 (1964). An individual who runs from the scene of a crime is suspect. Running, if otherwise unexplained, tends to communicate the individual's sense of guilt and his wish to escape immediate pursuit. The amount of evidence required to justify the giving of this instruction is well established. A court should be able to reasonably infer from the evidence that the defendant left the scene in a manner which obviously invites suspicion or announces guilt.

> The test is two-fold. First, the evidence is viewed to ascertain whether it supports a reasonable inference that the flight or attempted flight was open, such as the result of immediate pursuit. If this is not the case then the evidence must support the inference that the accused utilized the element of concealment or attempted concealment. (citations omitted) The absence of evidence supporting either of these findings would mean that the giving of an instruction on flight would be prejudicial error. (citations omitted).

*State v. Smith,* 113 Ariz. 298 at 300, 552 P.2d 1192 at 1194 (1976).

■ Witnesses testified that Weible ran from the scene of the crime. Somewhat later, when the police spotted him, he ducked into his girlfriend's apartment and quickly exited out the back. Testimony indicates that in his haste to escape, Weible entered two other couple's apartments and at some point apparently changed and discarded his clothes. Clearly it is this type of behavior that a flight or concealment instruction is designed to reach.

■ Defendant argues that even if the evidence justified giving a flight instruction, this instruction unfairly singled out specific damaging evidence. We disagree. Flight instructions point out to jurors that they may consider the defendant's behavior at or near the scene of the crime as bearing on guilt or innocence. Thus, such instructions necessarily refer in a very general

manner to the defendant's post-crime behavior. In *State v. Swinburne,* 116 Ariz. 403, 414, 569 P.2d 833, 844 (1977), we upheld an instruction similar to that used in this case. We hold that the instruction was properly general in form and did not unfairly single out evidence.

The second contention that the defendant raises is that he was improperly sentenced under A.R.S. § 13–604.01(A) and (B). Defendant argues that this statute, by its definition, only applies to individuals that are on parole from Arizona and that since he was from Illinois the statute does not apply to him.

At the time the defendant committed the crimes for which he is charged, A.R.S. § 13–604.01 read as follows:

**§ 13–604.01. Offenses committed while released from confinement**

A. Notwithstanding any provision of law to the contrary, a person convicted of any *felony offense* involving the use or exhibition of a deadly weapon or dangerous instrument or involving the intentional or knowing infliction of serious physical injury upon another if committed while the person is on probation, work furlough or any other release from confinement shall be sentenced to life imprisonment and is not eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough or release from confinement on any other basis except as specifically authorized by § 31–233, subsection A or B until the person has served not less than twenty-five years. A sentence imposed pursuant to this subsection shall be consecutive to any other sentence from which the convicted person had been temporarily released.

_____

B. Notwithstanding any provision of law to the contrary, a person convicted of any *felony offense* not included in subsection A of this section if committed while the person is on probation, parole, work furlough or any other release from confinement shall be sentenced to a term of not less than the presumptive sentence authorized for the offense, and the person is not eligible for suspension or commuta-

tion of sentence, probation, pardon, parole, work furlough or release from confinement on any other basis except as specifically authorized by § 31–233, subsection A or B until the sentence imposed by the court has been served. A sentence imposed pursuant to this subsection shall be consecutive to any other sentence from which the convicted person had been temporarily released (emphasis added).

Defendant points to the words "felony offense" and argues that their definitions are controlling. A.R.S. § 13–105(11) defines felony:

"Felony" means an offense for which a sentence to a term of imprisonment to the custody of the department of corrections is authorized *by any law of this state* (emphasis added).

A.R.S. § 13–105(18) defines offense:

"Offense" means conduct for which a sentence to a term of imprisonment or of a fine is provided by any law of this state or by any law, regulation or ordinance or a political subdivision *of this state* (emphasis added).

Defendant maintains that A.R.S. § 13–604.-01, read in conjunction with these two definitions, requires application of the statute only to Arizona offenses.

For this proposition, defendant cites *State v. Mitchell,* 136 Ariz. 364, 666 P.2d 464 (1983). In that case, two individuals whose driver's licenses had been revoked by states other than Arizona, were arrested in Arizona for driving under the influence of intoxicants. Both individuals were charged under A.R.S. § 28–692.02. That statute provides that individuals driving with revoked licenses who are subsequently arrested in Arizona for driving under the influence are guilty of a class-6 felony. The issue here was whether licenses revoked by other states are included within the meaning of "revocation" in A.R.S. § 28–692.02. The court held that A.R.S. § 28–692.02 does not apply to individuals who have had their licenses revoked by other states. Defendant would have us also hold that A.R.S. § 13–604.01 does not

apply to individuals with parole status from other states.

We distinguish the case at bar from *State v. Mitchell, supra.* In that case it was correct to hold that A.R.S. § 28–692.02 did not apply to individuals with licenses revoked by other states because analytically these defendants were not in Arizona with revoked licenses. Those defendants were in Arizona without any license at all, since no state at that point had granted them permission to drive. On the other hand, in the case at bar Weible did not leave his parole status behind when he crossed into Arizona, rather this status accompanied him wherever he went. We find *State v. Mitchell* inapposite.

■■ Penal statutes are not to be strictly construed, but must be construed according to their fair meaning to promote justice. A.R.S. § 13–104. In determining what construction to place upon a statute, legislative intent is controlling. *State v. Deddens,* 112 Ariz. 425, 542 P.2d 1124 (1975). In this vein, pragmatic construction is required if technical construction would lead to absurdity. *State v. LeMatty,* 121 Ariz. 333, 590 P.2d 449 (1979).

Defendant would have us hold that A.R.S. § 13–604.01 applies only to individuals on parole from Arizona. With this construction, if two individuals, both on parole, one from Arizona and one from New Mexico, committed the same crime in Arizona, the Arizonan would be sentenced under the enhancement provisions of A.R.S. § 13–604.01, while the New Mexico defendant would be sentenced differently. In effect, this kind of unequal treatment would imply that Arizonans who commit crimes in Arizona while on parole are somehow more blameworthy, or conversely, out-of-state parolees are less blameworthy. An individual is no less blameworthy or no less a repeat offender if his prior felonies were committed in other states.

■ We read the definition of "felony" in A.R.S. § 13–604.01 to mean "an offense for which a sentence to the custody of the department of corrections is *authorized* by

any law of this state. The operative word is *authorized.* If a felony committed in a foreign jurisdiction would be an offense for which Arizona would *authorize* imprisonment then the requirement of A.R.S. § 13–604.01 is met. We read the term "provided" in the definition of "offense" in a like manner.

This reading of A.R.S. § 13–604.01 comports with what we understand to be the legislative intent. We cannot believe that our legislature would intend to treat parolees from Arizona disparately. We presume that the legislature intended equal treatment for similarly situated individuals. We take note that during the thirty-sixth legislative session of 1984, A.R.S. § 13–604.01 was amended for the second time. While this amendment is not controlling it is revealing. Sections (A) and (B) of A.R.S. § 13–604.01 now contain the language:

"... A sentence imposed pursuant to this subsection shall revoke the convicted person's release and shall be consecutive to any other sentence from which the convicted person had been temporarily released, UNLESS THE SENTENCE FROM WHICH THE CONVICTED PERSON HAD BEEN PAROLED OR PLACED ON PROBATION WAS IMPOSED BY A JURISDICTION OTHER THAN THIS STATE."

Clearly this language indicates that the legislature contemplated that A.R.S. § 13–604.01 would apply to defendants paroled from other states that commit subsequent felonies in Arizona.

■ Consequently, we hold that A.R.S. § 13–604.01 applies to defendants that are on parole from felony convictions, regardless of where the defendants' parole status originated. The test is whether the prior felony conviction, resulting in the parole status, would have been authorized by the laws of Arizona.

We note two clerical errors in the sentencing minute entry. The minute entry indicates that all sentences are to be served concurrently. This conflicts with both the transcript and the defendant's brief. They indicate that the two life sentences are to

run concurrently, the two sentences of 4.5 years are to run concurrently, but that the sentences of 4.5 years are to run consecutively to the life sentences. Since the defendant agrees with the transcript, and the state does not contest, we modify the sentence to reflect the transcript's designation. A.R.S. § 13-4037.

The minute entry also deviates from the transcript in that it fails to credit the defendant with the time he served awaiting trial. The transcript indicates that the trial judge credited the defendant with 198 days. The state does not contest this issue. Pursuant to A.R.S. § 13-4037, we modify the sentence to credit the defendant with 198 days against both trespass counts I and II. *State v. Cruz-Mata*, 138 Ariz. 370, 674 P.2d 1368 (1983).

We have reviewed the record for fundamental error pursuant to A.R.S. § 13-4035 and have found none. Accordingly, we affirm the judgments of conviction and the sentences as modified.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.