988 P.2d 168

HOSPITAL CORPORATION OF NORTH-WEST, INC., an Arizona corporation dba Northwest Hospital, Plaintiff–Appellant,

v.

ARIZONA DEPARTMENT OF HEALTH SERVICES, Defendant–Appellee.

No. 1 CA–CV 98–0277.

Court of Appeals of Arizona, Division 1, Department E.

May 11, 1999.

Review Denied Oct. 26, 1999.

Janet A. Napolitano, Attorney General By Kevin D. Ray Nancy E. Campbell, Phoenix, Attorneys for Appellee.

Sacks Tierney P.A. By James W. Armstrong, Phoenix, Attorneys for Appellant.

## OPINION

WEISBERG, Judge.

¶ 1 Disagreeing with the Arizona Department of Health Services' (DHS) interpretation of the scope of practice for paramedics, Hospital Corporation of Northwest, Inc. (Northwest) appeals from the trial court's grant of summary judgment to DHS. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Northwest allowed DHS-certified paramedics, while under the supervision of physicians, to administer some medications to emergency room patients. The medications included aspirin, Tylenol, Mylanta, and ibuprofen, which, Northwest admits, paramedics are not allowed to dispense in the field.

¶ 3 Upon DHS's request, Northwest ceased the disputed practice. Northwest then filed a declaratory judgment action seeking the interpretation of the authorized scope of practice of DHS-certified paramedics while working in hospital emergency rooms under the supervision of physicians. DHS sought summary judgment, contending that the scope of a paramedic's practice is prescribed by statute and regulation, neither of which allows paramedics to administer these medications in a hospital. Northwest responded that the relevant statutes and regulations apply only to paramedics in the field but not to those who work inside a hospital under physician supervision. The trial court granted DHS summary judgment, from which Northwest timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes Annotated (A.R.S.) section 12–2101(B).

## DISCUSSION

¶ 4 Statutory interpretation involves questions of law, which we review *de novo*. *State Compensation Fund v. Superior Court (EnerGCorp, Inc.)*, 190 Ariz. 371, 374–75, 948 P.2d 499, 502–03 (App.1997). A statute's language may be the best indicator of its intent, and if we find no clearly expressed legislative intent to the contrary, the language is conclusive. *State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 594, 667 P.2d 1304, 1309 (1983). But if the words fail to reveal the legislature's intent, and the legislative history is unclear, we will consider the entire statutory scheme, its subject matter, consequences, purpose, and spirit so as to give the statute a fair and sensible meaning. *Stuart v. Insurance Co. of N. Am.*, 152 Ariz. 78, 81, 730 P.2d 255, 258 (App.1986). Here, the legislature has adequately expressed itself.

¶ 5 Northwest argues that the statutory scheme reflected by A.R.S. sections 36–2201 *et seq.* manifests an intent to regulate paramedics in the field but not in a hospital setting. DHS responds that nothing in the statutes indicates a legislative intent to regulate paramedics in the field only. We agree with DHS.

¶ 6 There are numerous statutory and regulatory references to paramedics working in the field, but these do not demonstrate a legislative intent to exempt paramedics working in a hospital from regulation. *See City of Phoenix v. Donofrio*, 99 Ariz. 130, 133, 407

P.2d 91, 93 (1965) (court will not read into statute something not clearly within the intent as gathered from the statute). Rather, the extensive regulation of pre-hospital activities naturally reflects the reality that most of the work by paramedics is in response to emergencies in the field; thus, most of the statutes and regulations relate to those activities and conditions.

¶ 7 Northwest, however, contends that the administrative regulations, particularly Arizona Administrative Code (A.A.C.) R9–25–608, when read with other provisions governing emergency medical services, manifest the intent to govern paramedics only as they render pre-hospital services in the field. Northwest therefore concludes that paramedics under physician supervision in a hospital should not be limited to providing only those services that are authorized in the field. We disagree.

¶ 8 To begin, A.A.C. R9–25–608 [1] empowers a paramedic to provide only those types of treatment or medications set forth in the Arizona Advanced Life Support Curricula; and the Curricula does not authorize paramedics to administer the subject drugs either in the field or in the hospital. This rule, therefore, does not advance Northwest's position.

¶ 9 Next, A.A.C. R9–13–402 allows that paramedics may "upon order of the medical control authority, do any of the following: . . . *[a]dminister medications as determined by the Department.*" R9–13–402(B)(4) (September 30, 1994)(emphasis added).[2] But no order has been issued by DHS, or even requested by Northwest, that would allow paramedics to administer the subject drugs to patients at any location.

¶ 10 Moreover, the statutory scheme found in Chapter 21.1 is broadly titled, "Emergency Medical Services." In A.R.S. section 36–2217 (1995), the legislature created exemptions from regulation for certain persons, vehicles, and equipment; but none of these exemptions pertains to paramedics working in hospital emergency rooms. The statutes define "[e]mergency medical services" as "those services required following an accident or an emergency medical situation . . . [f]or on-site emergency medical care" and "[i]n the use of emergency receiving facilities." A.R.S. § 36–2201(11)(a), (d) (1995). An emergency receiving facility is "a licensed health care institution that offers emergency medical services, is staffed twenty-four hours a day and has a physician on call." A.R.S. § 36–2201(13) (1995). Thus, the legislature evidenced its intent to regulate emergency medical care whether rendered at an accident site or in an emergency receiving facility such as a hospital emergency room.

¶ 11 In other provisions, the legislature has empowered the director of DHS to adopt "standards and criteria for the . . . certification . . . of emergency medical technicians and ambulance attendants." A.R.S. § 36–2202(A)(2) (1995). The director must set standards governing "the quality of emergency care," A.R.S. § 36–2202(A)(3) (1995), and must develop testing procedures and adopt standardized training and medical standards for the certification of all classes of emergency medical technicians. A.R.S. § 36–2204(2), (1), (3) (1995). Also, the director must "establish protocols[ [3]] . . . governing the medical treatments, . . . *medications* and techniques which may be administered or performed by each class of emergency medical technician." A.R.S. § 36–2205 (1995) (emphasis added).

¶ 12 DHS argues that the plain and unambiguous language of these statutes grants it the authority to regulate paramedics' activities wherever they are performed and that no rules of construction are needed to interpret them. We agree. The statutory language is plain and does not create an ambiguity or conflict with any other statute. The

---

1. This rule was not effective until October 15, 1996, long after Northwest began using paramedics to administer medications in the hospital.

2. A.A.C. R9–13–402 was repealed and replaced by A.A.C. R9–25–608.

3. In this context, protocols are DHS rules that govern the permitted treatments and medications paramedics are allowed to give.

statutes grant broad authority to DHS to regulate not only the education, training, certification, and discipline of paramedics, and to delineate the scope of authorized treatment by them, but also to regulate the medical care that paramedics may provide in emergency rooms.

¶ 13 There is no indication that the legislature, in creating this comprehensive scheme, intended to omit from coverage paramedics working in an emergency room under a physician's supervision or to restrict DHS' authority over paramedics to those working in pre-hospital settings. If the legislature had intended to provide DHS only limited authority, it could easily have done so. *See State v. French,* 166 Ariz. 247, 249, 801 P.2d 482, 484 (App.1990) (we give words reasonable and ordinary meaning when the legislature could have limited the words if it intended a different meaning). Here, Northwest has failed to cite a single statute or regulation that expressly allows a paramedic to administer the subject medications at *any* location, or any that allows a hospital to expand a paramedic's scope of practice beyond that mandated by DHS. *See Johnson v. Collins,* 11 Ariz.App. 327, 331, 464 P.2d 647, 651 (1970)(court will not read into statute something that departs from its manifest intent). Therefore, a paramedic who works in a hospital emergency room where physicians are present does not enjoy an enlarged scope of practice simply because the hospital wishes it so.

¶ 14 Northwest nevertheless argues that the trial court's judgment produces an absurd result by prohibiting highly skilled paramedics from performing relatively simple procedures while unlicensed medical assistants with lesser training are not barred. DHS responds that, if Northwest finds the limitation on paramedics to be absurd, it may petition to the director for a protocol amendment. *See* A.R.S. § 36–2205(D) (1995). But Northwest has not done so.

¶ 15 Moreover, it is the Board of Medical Examiners, rather than DHS, that regulates the practice of medical assistants. DHS has conceded that a paramedic may perform the services of a medical assistant, but only after qualifying as such and thereby coming under the purview of the Board of Medical Examiners. Consequently, on a practical level, there is no reason why Northwest could not qualify its paramedics as medical assistants and employ them in its hospital consistent with appropriate regulations.

## CONCLUSION

¶ 16 For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of DHS and its denial of attorney's fees to Northwest. Further, because Northwest is not the prevailing party, we deny its request for attorney's fees on appeal.

CONCURRING: NOEL FIDEL, Presiding Judge, and E.G. NOYES, Jr., Judge.