18 P.3d 707

Kenneth L. TRUE, Petitioner/Appellant,

v.

Terry STEWART, George Herman, Arizona Department of Corrections, Cook Unit, Respondents/Appellees.

No. CV–00–0066–PR.

Supreme Court of Arizona, En Banc.

March 6, 2001.

Janet Napolitano, The Attorney General by S. Christopher Copple, Assistant Attorney General and James R. Morrow, Assistant Attorney General and Randall M. Howe, Assistant Attorney General, Phoenix, Attorneys for Stewart, Herman, and Arizona Department of Corrections, Cook Unit.

Cooper and Udall, by Laura E. Udall, Tucson, Attorney for True.

## OPINION

McGREGOR, Justice.

¶ 1 Kenneth L. True (True) brought this action seeking release from the custody of the Department of Corrections pursuant to Arizona Revised Statutes (A.R.S.) section 41–1604.10, which governs earned release credits. The trial court denied habeas corpus relief on the grounds that section 41–1604.10 does not apply to True, who committed the offense for which he was incarcerated in 1985, at which time the law rendered him ineligible to earn release credits. The court of appeals reversed, basing its decision upon *Merrick v. Lewis,* 192 Ariz. 272, 964 P.2d 473 (1998). We granted review and now affirm the decision of the trial court.

## I.

¶ 2 In 1985, True pled guilty to attempted child molestation, a crime classified as a dangerous crime against children. At that time, A.R.S. section 13–604.01 G prevented a person convicted of dangerous crimes against children from being released until he had served at least half his sentence. A.R.S. § 13–604.01 G (1985). Moreover, other statutes directed that these prisoners could not be placed in the class of inmates eligible to acquire earned release credits, thereby ensuring that they could never accrue earned release credits. A.R.S. §§ 41–1604.06 C, 41–1604.07 A (1985).

¶ 3 After True's conviction, the legislature acted several times to revise the earned release statutes. In 1990, the legislature amended the earned release credit statutes to provide that any person sentenced pursuant to a statute that required a mandatory prison term could not be placed in the class of inmates eligible to earn release credits, thus enlarging the group of offenders ineligible for early release credits. 1990 Ariz.Sess.Laws (Second Reg. Sess.) ch. 131, § 4. Because the legislature did not expressly declare the 1990 amendments to be retroactive, they did not apply to persons (including True) who committed offenses before September 27, 1990.[1] *See* A.R.S. § 1–244; *see also Aranda v. Industrial Comm'n of Ariz.,* 198 Ariz. 467, 11 P.3d 1006, 1009 (2000). As of 1990, therefore, two earned release credit schemes existed in Arizona— one for inmates whose offenses occurred before the 1990 amendments, and another for inmates whose offenses occurred after the 1990 amendments.

¶ 4 In 1992, the legislature again amended the earned release credit statutes to allow an inmate sentenced pursuant to a statute that required a mandatory minimum term to be placed in the class of inmates eligible to earn release credits after he had served onefourth of the mandatory minimum portion of his sentence. 1992 Ariz.Sess.Laws (Eighth Spec. Sess.) ch. 1, § 1. The legislature expressly made these amendments retroactive to September 27, 1990, the effective date of the 1990 amendments. *Id.* at § 2. As of 1992, two earned release credit schemes remained in effect—one for inmates whose offenses occurred before the September 27,

---

1. These amendments had no specified effective date. An act with no specified effective date takes effect on the ninety-first day after the day on which the session of the legislature enacting it adjourns sine die. *Bland v. Jordan,* 79 Ariz. 384, 386, 291 P.2d 205, 207 (1955). The legislature enacted the 1990 amendments in the second regular session of the thirty-ninth legislature, which adjourned sine die on June 28, 1990. 1990 Ariz.Sess.Laws vol. 1, at XI. The 1990 amendments to the earned release credit scheme therefore became effective on September 27, 1990.

1990, effective date of the 1990 amendments, and another, based on the 1992 amendments, for inmates whose offenses occurred after the September 27, 1990, effective date of both the 1990 and 1992 amendments.

¶ 5 In 1993, as part of omnibus criminal code revisions, the legislature created a new earned release credit system, which it made effective on January 1, 1994. The intent provision of this omnibus legislation provided that "[f]or any person convicted of an offense committed before the effective date of this act the provisions of this act shall have no effect and such person shall be eligible for and may participate in such programs as though this act has not passed." 1993 Ariz. Sess.Laws (First Reg. Sess.) ch. 255, § 101.

¶ 6 The omnibus legislation revised the statutes related to early release credits. The 1993 amendments first struck the 1992 version of the earned release statutes to make room for new provisions, and then reinserted the old provisions, verbatim, but with different section numbers, and with the added qualification in each that "[t]his section applies only to persons who commit felonies before January 1, 1994." A.R.S. §§ 41–1604.09 I, 41–1604.10 E.

¶ 7 The interaction between the language of the intent provision and the language of sections 41–1604.09 I and 41–1604.10 E gave rise to the issue resolved in *Merrick v. Lewis*, 192 Ariz. 272, 964 P.2d 473 (1998). In *Merrick*, we addressed the question whether A.R.S. section 41–1604.10 applied to Merrick, an inmate who committed a felony in 1991. The court of appeals had construed the intent provision of the 1993 amendments to require that *no* provisions of the enactment, even those which by their specific terms applied to pre–1994 offenders, applied to pre–1994 offenders. *Merrick v. Lewis*, 191 Ariz. 71, 74, 952 P.2d 309, 312 (App.1997). We concluded that the specific language of the renumbered sections describing the old earned release credit system did not conflict with the intent provision, but rather implemented the complex statutory scheme that resulted from the amendments by retaining the old system for pre–1994 offenders, including Merrick. *Merrick*, 192 Ariz. at 274, 964 P.2d at 475. Consequently, we held that

A.R.S. section 41–1604.10 applies to inmates convicted of crimes occurring before January 1, 1994. 192 Ariz. at 275, 964 P.2d at 476.

¶ 8 In making that general statement, upon which the court of appeals relied in this action, we had no reason to consider the full complexity of the pre–1994 earned release credit system. That is, because Merrick offended in 1991, he clearly fell within the class of inmates affected by the 1990 and 1992 amendments, rather than within the class of inmates who, because they offended before the effective date of the 1990 and 1992 amendments, were left unaffected by those amendments. *Merrick* thus did not address the issue before us today, which requires that we consider whether and how the 1993 enactments affect an offender convicted before September 27, 1990.

## II.

■ ¶ 9 To answer the question raised in this action, we must determine whether the legislature intended the 1993 amendments to affect inmates convicted before the effective date of the 1990 and 1992 amendments. The language of the 1993 omnibus legislation makes resolving that question difficult, because the legislation includes two seemingly contradictory provisions.

¶ 10 By announcing in the intent provision that the omnibus legislation should have no effect on persons convicted before the effective date of the act, the legislature indicated its intent to retain the two early release categories in effect as of 1993. The language of the intent provision, standing alone, therefore would lead us to conclude that the omnibus legislation, by maintaining the status quo for persons convicted of offenses committed before January 1, 1994, retained intact the two pre-existing classes of offenders.

¶ 11 The legislature introduced uncertainty, however, by subsequently stating that A.R.S. sections 41–1604.09 and 41–1604.10 apply "only to persons who commit felonies before January 1, 1994." True argues that the legislature, by using that language, intended to eliminate the two distinct categories established by the 1990 and 1992 amendments to the early release statutes, and that

inmates in his class now can earn early release credits.

■ ¶ 12 When two statutes appear to conflict, we will attempt to harmonize their language to give effect to each. *State v. Wagstaff,* 164 Ariz. 485, 491, 794 P.2d 118, 124 (1990) (citing *Powers v. Isley,* 66 Ariz. 94, 100, 183 P.2d 880, 884 (1947)). We can begin reconciling the intent provision and the renumbered statutes by recognizing that the language of the renumbered sections permits more than one interpretation. If the legislature had instructed that each renumbered section "applies to *all* persons who commit felonies before January 1, 1994," the new sections would, on their face, apply to all inmates, even those like True who were not affected by the 1990 and 1992 amendments. The limiting clause, however, while applying "only" to persons who committed felonies prior to January 1, 1994, does not expressly apply to "all" persons who committed felonies before that date. This language leaves open the possibility that the legislature did not intend to apply sections 41–1604.09 and .10 to those inmates who were not governed by the 1990 and 1992 amendments to the earned release credit program. While that possibility exists, however, certainly the language of the renumbered sections does not compel such an interpretation.

¶ 13 The intent provision, which constitutes the final section of the nearly two-hundred page legislative enactment, expresses the legislative intent within the confines of the statute. All versions of the omnibus legislation contained intent or applicability provisions stating that the legislation applied only to persons who committed offenses after the effective date of the act. Senate Engrossed Bill, S.B. 1049, 41st Leg., 1st Reg. Sess. (Ariz.1993); House Engrossed Bill, S.B. 1049, 41st Leg., 1st Reg. Sess. (Ariz.1993); Free Conference Committee Bill, S.B. 1049, 41st Leg., 1st Reg. Sess. (Ariz.1993); H.B. 2122, 41st Leg., 1st Reg. Sess. (Ariz.1993). The enacted version of the intent provision clearly states that, for persons who committed offenses before January 1, 1994, incarceration and release are to proceed as though the legislation had never passed. 1993 Ariz. Sess.Laws (First Reg. Sess.) ch. 255, § 101.

If the legislature had not passed the omnibus bill, the class of inmates into which True falls would have remained ineligible to earn early release credits. To give effect to that statement of intent, then, we must interpret sections 41–1604.09 and .10 in a manner that does not change True's ability to earn early release credits.

¶ 14 The legislative history of the omnibus crime bill provides no evidence urging a contradictory result. Senate Bill 1049 added sections 41–1604.09 and .10. S.B. 1049, 41st Leg., 1st Reg. Sess. (Ariz.1993). As first passed by the Senate, however, S.B. 1049 included no provisions addressing earned release credits. Senate Engrossed Bill, S.B. 1049, 41st Leg., 1st Reg. Sess. (Ariz.1993). The House Judiciary Committee added the portions of the bill affecting earned release (new sections 41–1604.06 and .07) in an effort to combine S.B. 1049 with House Bill 2122, a truth-in-sentencing bill then pending in the House. *House Judiciary Comm. Meeting Minutes,* 41st Leg. (Feb. 26, 1993). The Senate rejected the House's revisions to S.B. 1049, and the two houses formed a free conference committee. S.B. 1049, as reported out of the conference committee, contained both the new sections 41–1604.06 and .07 and the old .06 and .07, renumbered as sections 41–1604.09 and .10 and including the limiting language described above. Free Conference Committee Bill, S.B. 1049, 41st Leg., 1st Reg. Sess. (Ariz.1993). The records of the legislature include no minutes of the conference committee or the report, if any, that accompanied the bill as it emerged from conference. Nothing in the legislative history, therefore, contradicts the statutory statement of intent.

¶ 15 In the absence of any contradictory legislative history, and given the ambiguity of the limiting provisions in sections 41–1604.09 and .10, we will apply the legislature's stated intent. We therefore conclude that A.R.S. sections 41–1604.09 and .10 do not affect the eligibility of persons convicted prior to September 27, 1990, for earned release credits. Those persons, including True, remain in the position they occupied prior to passage of the 1993 legislation.

## III.

¶ 16 For the foregoing reasons, we vacate the decision of the court of appeals and affirm the judgment of the superior court.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice-Chief Justice and FREDERICK J. MARTONE, Justice.

FELDMAN, J., specially concurring.

¶ 17 The majority finds the statute ambiguous and therefore turns to legislative intent to interpret its meaning. I write separately because I cannot agree that the language of the statute *itself is ambiguous*. *I concur in the result* because the statement of legislative intent is quite clear, and, in such cases, I believe that intent should govern in statutory construction and application.

¶ 18 True's eligibility for early release credits is governed by present A.R.S. §§ 41-1604.09 and 41-1604.10. The language (which the majority refers to as "limiting language") governing application of each statute is identical and makes each statute applicable *"only to persons who commit felonies before January 1, 1994." See* A.R.S. §§ 41-1604.09(i) and 41-1604.10(e) (emphasis added). The word "only" thus limits application to persons who committed crimes before 1994 and excludes those who committed crimes after January 1, 1994. True committed his crime before 1994. The statutes contain no language qualifying or restricting membership in the covered class to some subgroup whose crimes were committed before 1994. Because True committed his felony in 1985, it was committed "before January 1, 1994," and the statute's plain, unambiguous language makes its provisions applicable to him.

¶ 19 But the majority finds ambiguity because the provision in question uses the word "only" instead of "all." The majority says:

If the legislature had instructed that each renumbered section "applies to *all* persons who commit felonies before January 1, 1994," the new sections would, on their face, apply to *all* inmates, even those like True who were not affected by the 1990 and 1992 amendments. The limiting clause, however, while applying "only" to persons who committed felonies prior to

January 1, 1994, does not expressly apply to "all" persons who committed felonies before that date. This language leaves open the possibility that the legislature did not intend to apply [the sections] to those inmates who were not governed by the 1990 and 1992 amendments.

Opinion at ¶ 12 (first emphasis in original; second emphasis added). Suppose this statute omitted both "only" and "all" and simply said it applied to "persons whose crimes were committed before 1994." Could we say this is ambiguous?

¶ 20 The use of the word "only" does not create ambiguity but simply excludes others from the covered class. When something is said to apply to only a certain category of persons, it means that the principle applies to that category and not to others. True falls within the included category, and this unambiguously makes the statutory language applicable to him. Thus, if we were to be literalists, depending on text alone, True would be entitled to his earned release credits.

¶ 21 The problem, however, is that such construction destroys the statute's clear intent. That intent is accurately described in ¶¶ 9 to 15 of part II of the majority opinion, and the details need not be repeated here. As the majority states, all versions of the legislation in question contained intent or applicability provisions:

All versions of the omnibus legislation contained intent or applicability provisions stating that the legislation applied only to persons who committed offenses after the effective date of the act. The enacted version of the intent provision clearly states that, for persons who committed offenses before January 1, 1994 [such as True], incarceration and release are to proceed as though the legislation had never passed. If the legislature had not passed the omnibus bill, the class of inmates into which True falls would have remained ineligible to earn early release credits.

*Id.* at ¶ 13 (citations omitted).

¶ 22 We thus have a clear ambiguity, not with respect to the statute's language but between the language and the drafters' clear

intent. In my view, it would be better not to reach for some internal linguistic ambiguity but to hold simply that when the intent is clear but conflicts with statutory language, the drafters' intent should govern. *See Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (The "starting point for interpreting a statute is the language of the statute itself. *Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.*" (Emphasis added.)). We have followed this rule in Arizona. *See Mail Boxes Etc., U.S.A. v. Industrial Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995) ("Where language is unambiguous, it is *normally* conclusive, absent a clearly expressed legislative intent to the contrary.") (emphasis added)(quoting *State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 592, 667 P.2d 1304, 1307 (1983)).

¶ 23 The rule applied in *Consumer Product Safety Commission* and its Arizona analogues is not a radical new approach to statutory interpretation. As early as 1916, this court wrote that:

> It is the spirit [the object] and purpose of a statute which are to be regarded in its interpretation, and if they find fair expression in the statute, it should be so construed as to carry out the legislative intent, even though such construction is contrary to the literal meaning of some provisions of the statute.

*Deyo v. Arizona Grading & Constr. Co.*, 18 Ariz. 149, 154, 157 P. 371, 372–73 (1916) (quoting *People v. Lacombe*, 99 N.Y. 43, 1 N.E. 599 (1885)).

¶ 24 It sometimes seems that in interpreting a statute, one can reach almost any result simply by selecting the rule of construction to be applied. Thus, the Arizona Reports are full of cases in which courts have articulated all or part of some canon of construction, whether applicable or inapplicable to the case. For example, in *Hayes v. Continental Insurance Co.*, a case written by this author, we stated that if "a statute's language is clear and unambiguous, we apply it without resorting to other methods of statutory interpretation." 178 Ariz. 264, 268, 872

P.2d 668, 672 (1994). *Hayes*, however, was a case in which the language was not clear and unambiguous but, rather, susceptible to conflicting interpretations. *Id.; see also* cases such as *State v. Riggs*, 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997); *State v. Reynolds*, 170 Ariz. 233, 234, 823 P.2d 681, 682 (1992); *State v. Sweet*, 142 Ariz. 266, 269, 693 P.2d 921, 924 (1985); *State v. Chavez*, 172 Ariz. 102, 104, 834 P.2d 825, 827 (App.1992) ("consequence of literalism" is to enact a statute when the legislature, "had it recognized the tendency of its chosen words, would have surely undertaken to avoid" such consequence).

¶ 25 In fact, Arizona cases have long cautioned courts to reject literal statutory construction that would result in an absurdity and defeat the purpose of the statute being construed. *See In re Marriage of Gray*, 144 Ariz. 89, 91, 695 P.2d 1127, 1129 (1985); *State v. Weible*, 142 Ariz. 113, 118, 688 P.2d 1005, 1010 (1984). Nor is Arizona the only jurisdiction presenting this seeming incompatibility of cases on the subject of statutory construction. For example, while the United States Supreme Court indicated that legislative intent should govern in *Consumer Product Safety Commission*, it has also stated that "a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (citations omitted).

¶ 26 This and other courts have also continued to maintain what I think is the proper rule of deference to the legislature: the primary rule of construction is the legislature's intent, and when that intent is clear, it should govern. *Means v. Industrial Comm'n*, 110 Ariz. 72, 74, 515 P.2d 29, 31 (1973); *Ward v. Frohmiller*, 55 Ariz. 202, 207, 100 P.2d 167, 169 (1940); *see also Austin v. Barrett*, 41 Ariz. 138, 144, 16 P.2d 12, 14–15 (1932) (when intent is clear, longstanding administrative practice provides little support for erroneous construction); *Hospital Corp. of Northwest, Inc. v. Arizona Dep't of Health Servs.*, 195 Ariz. 383, 384, 988 P.2d 168, 169

**402**

(App.1999)(citing *Pickrell,* 136 Ariz. at 592, 667 P.2d at 1307).

¶ 27 The words "only" and "all" are clearly synonymous within the context of §§ 41–1604.09(i) and 41–1604.10(e). Moreover, the legislature's intent is not only apparent but manifest, as expressed in the omnibus intent provisions. *See* Opinion at ¶¶ 9 to 15. To disregard that clear intent in favor of rigid application of statutory prose does violence to the foundational principle of statutory construction: effect the will of the legislature.

¶ 28 Thus, we should not attempt to construe statutes in such a way as to defeat clearly ascertainable legislative intent or to reach results that are absurd in light of such intent. *Calik v. Kongable,* 195 Ariz. 496, 498, 990 P.2d 1055, 1057 (1999) ("With only a few *exceptions,* if the language is clear and unambiguous, we apply it without using other means of statutory construction") (emphasis added); *State v. Thomas,* 196 Ariz. 312, 314, 996 P.2d 113, 115 (App.1999); *State v. Medrano–Barraza,* 190 Ariz. 472, 474, 949 P.2d 561, 563 (App.1997); *Resolution Trust Corp. v. Western Technologies, Inc.,* 179 Ariz. 195, 201, 877 P.2d 294, 300 (App.1994). In construing and applying a statute, we should "consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose." *Hayes,* 178 Ariz. at 268, 872 P.2d at 672. Among other things. we consider the context of the overall legislative scheme. *Estate of Hernandez v. Arizona Board of Regents,* 177 Ariz. 244, 866 P.2d 1330 (1994).

¶ 29 Applying the principles outlined above, and given the clear legislative intent, I readily agree with the majority's ultimate construction of the statute and the result it reaches; however, I cannot join in the determination of ambiguity.