248 P.3d 217

STATE of Arizona, Appellee,

v.

Richard J. GLASSEL, Appellant.

No. 1 CA–CR 10–0373.

Court of Appeals of Arizona,
Division 1, Department E.

March 1, 2011.

Thomas C. Horne, Attorney General by Kent E. Cattani, Chief Counsel Criminal Appeals/Capital Litigation Section and Ginger Jarvis, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Office of the State Capital Post–Conviction Public Defender by Martin Lieberman and Charles J. Babbitt, III, Phoenix, Attorneys for Appellant.

Arizona Voice for Crime Victims by Douglas L. Irish and Keli B. Luther, Phoenix, Attorneys for Victim.

## OPINION

IRVINE, Judge.

¶ 1 Richard J. Glassel, a death row inmate at the Arizona Department of Corrections ("DOC"), appeals from the superior court's judgment amending the restitution order that requires funds from Glassel's inmate account be paid to a victim of his crime. The issue we must resolve is whether Glassel's

restitution obligations to a victim can properly be satisfied with monies deposited into Glassel's account by a family member who expressly desires the deposits not be used for restitution payments. For the reasons that follow, we hold such funds may be used for restitution purposes. We therefore affirm subject to the modification that the order does not apply retroactively.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 In 2002, Glassel was sentenced to death after being convicted of multiple counts of first degree murder and attempted first degree murder. *State v. Glassel*, 211 Ariz. 33, 41–42, ¶¶ 10, 15–16, 116 P.3d 1193, 1201–02 (2005). The Arizona Supreme Court affirmed Glassel's convictions and sentences. *Id.* at 59, ¶ 119, 116 P.3d at 1219. The circumstances of Glassel's crimes and ensuing trial are not relevant here.

¶ 3 D.L., as the spouse of a person Glassel murdered, is a victim of Glassel's criminal conduct and therefore has a constitutional right "[t]o receive prompt restitution" from Glassel. *See* Ariz. Const. art. 2, § 2.1(A)(8). By minute entry order filed April 22, 2003 (the "Restitution Order"), the superior court found D.L. was entitled to $4,277 as restitution and ordered Glassel to commence making restitution payments "on 10/1/2003 at the statutory rate." Glassel does not challenge D.L.'s right to be compensated this amount.

¶ 4 In 2007, the legislature revised the statutory scheme relating to restitution payments made from prisoner accounts maintained by the DOC. Specifically, the legislature deleted provisions that directed the DOC to deduct for restitution purposes thirty percent of an inmate's wages. *See* 2007 Ariz. Sess. Laws, ch. 140, § 2 (1st Reg. Sess.). The legislature simultaneously added subsection C to Arizona Revised Statutes ("A.R.S.") section 31–230 (2002), directing the DOC to withdraw on a monthly basis twenty to fifty percent of the funds available in a prisoner's "spendable account" to pay court-ordered restitution. 2007 Ariz. Sess. Laws, ch. 140, at § 1. A spendable account holds "[a]ll monies that are received by a prisoner and that

are not required to be deposited in another account." A.R.S. § 31–230(A).

¶ 5 Accordingly, on February 4, 2010, D.L. filed a motion in superior court requesting that the Restitution Order be amended by adding the following language: "Restitution shall be paid monthly in an amount determined by the [DOC] in compliance with A.R.S. § 31–230." Glassel objected to D.L.'s motion, arguing any "compulsory excise for restitution" from his spendable account would be improper because that account contained funds he characterized as "gifts" made by his family members who, along with Glassel, expressly "did not wish that gifts be applied to restitution." The court granted D.L.'s motion, reasoning A.R.S. § 31–230(C) did not contain an exemption from a restitution order for monetary gifts deposited into an inmate's spendable account. The court entered its order on April 5, 2010 ("Revised Order"), and Glassel timely appealed. We have jurisdiction pursuant to A.R.S. § 13–4033(A)(3) (2010).

## DISCUSSION

### 1. Interpretation of A.R.S. § 31–230(C)

¶ 6 Glassel argues the court incorrectly concluded that monetary gifts deposited into his spendable account can be used for restitution payments under A.R.S. § 31–230(C) despite the donor's express desire that the funds not be used for restitution. In support of this argument, Glassel contends the court's construction of the statute impermissibly conflicts with the Arizona Trust Code, A.R.S. §§ 14–10101 to –11102 (Supp. 2010), and other statutory provisions, including those relating to exemptions of debtors' property from judicial remedies. *See, e.g.,* A.R.S. §§ 33–1126, –1131 (2007).

¶ 7 We review issues of statutory interpretation de novo. *State v. Peek*, 219 Ariz. 182, 183, ¶ 6, 195 P.3d 641, 642 (2008). When interpreting a statute, our goal is to give effect to the legislature's intent. *Id.* at 184, ¶ 11, 195 P.3d at 643. We need not, however, interpret a statute when the legislature's intention is plainly apparent from the language of the statute itself. *State v. Medina*, 193 Ariz. 504, 511, ¶ 23, 975 P.2d 94, 101 (1999).

That is, we look to the language of the statute as "[t]he best and most reliable index of a statute's meaning." *Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 103, 859 P.2d 724, 726 (1993). If the statute's language is clear and unambiguous, we will give effect to the language and not use any other rules of statutory interpretation. *True v. Stewart*, 199 Ariz. 396, 401, ¶ 24, 18 P.3d 707, 712 (2001) (citing *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994)). Further, we will not read into a statute something that is not within the legislature's "manifest intention ... as gathered from the statute itself." *Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, 405, ¶ 13, 187 P.3d 1115, 1118 (App.2008) (quoting *State ex rel. Morrison v. Anway*, 87 Ariz. 206, 209, 349 P.2d 774, 776 (1960)).

¶ 8 Section 31–230(C) states:

If the court has ordered the prisoner to pay restitution pursuant to § 13–603, the director [of the DOC] shall withdraw a minimum of twenty per cent, or the balance owing on the restitution amount, up to a maximum of fifty per cent of the monies available in the prisoner's spendable account each month to pay the court ordered restitution.

¶ 9 As stated, the statute applies to "monies available in the prisoner's spendable account." Not only is there no reference to a donor's intent to shield gift money from being used for restitution payments, but the legislature simply did not provide an exemption for funds deposited into a spendable account as a "gift" to the prisoner.

¶ 10 Nor can we infer such a specific restriction from the express language of the statute. Construing § 31–230(C) in this manner would also be contrary to Arizona law that a donor does not retain control of money once a gift has been made. *See Neely v. Neely*, 115 Ariz. 47, 51, 563 P.2d 302, 306 (App.1977) (holding an essential element of an inter vivos gift is that the donor gives the donee "full possession and control of the property."); *cf. Stewart v. Damron*, 63 Ariz. 158, 163, 160 P.2d 321, 323 (1945) (holding a donor's intent is controlling only as to the issue of whether a gift was made).

¶ 11 We therefore determine that the legislature did not intend § 31–230(C), as written, to create an exemption for monies gifted to a prisoner's spendable account. Accordingly, we need not address what conflicts, if any, § 31–230(C) has with other statutes in order to determine its intended scope. Moreover, to graft an exemption onto § 31–230(C), as Glassel suggests, would be an improper exercise of judicial power. *See Antonio P.*, 218 Ariz. at 405, ¶ 13, 187 P.3d at 1118 (reading into a statute a meaning the legislature did not intend would alter the statute instead of interpreting it). Such a revision of the statute must be accomplished by the legislature, not the courts. For these reasons, we conclude that the superior court properly refrained from construing § 31–230(C) to include an exemption for gift monies.

**2. Due Process**

¶ 12 Glassel also raises due process claims. First, he asserts that the court deprived his donor and his non-restitution creditors of their procedural due process rights. Because he cites no authority to support this argument, however, we do not address it. *See Cullum v. Cullum*, 215 Ariz. 352, 355 n. 5, ¶ 14, 160 P.3d 231, 234 n. 5 (App.2007) (holding appellate courts "will not consider argument posited without authority."). We further note that Glassel's donor and his non-restitution creditors are not parties to this lawsuit. Therefore, Glassel does not have standing to raise these issues. *See Bennett v. Brownlow*, 211 Ariz. 193, ¶ 17, 119 P.3d 460, 463 (2005) ("To establish standing, we require that petitioners show a particularized injury to themselves.")

¶ 13 Second, to the extent Glassel properly and sufficiently argues that his own procedural due process rights have been violated, we summarily reject this assertion. Glassel clearly had notice of, and an opportunity to express his opposition to, D.L.'s request that the court amend the Restitution Order to conform with § 31–230(C) so that gift monies in Glassel's spendable account would be used for restitution payments.

¶ 14 Finally, Glassel contends that the Revised Order is a violation of his due process rights because of its ex post facto effect. The Revised Order did not change the origi-

nal requirement that restitution payments commence on October 1, 2003. Nevertheless, because D.L. agrees that the Revised Order should not apply retroactively, we amend the Revised Order to reflect that it applies only to funds deposited into Glassel's spendable account after April 5, 2010, the date the Revised Order was entered.

## CONCLUSION

¶ 15 We amend the Revised Order as set forth above. In all other respects, we affirm.

CONCURRING: PETER B. SWANN, Presiding Judge, and MAURICE PORTLEY, Judge.