NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MICHAEL ALFRED FATTOUCH, *Appellant.*

No. 1 CA-CR 25-0150

FILED 12-10-2025

Appeal from the Superior Court in Mohave County
No. CR-2024-00236
The Honorable Douglas Camacho, Commissioner

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Christine A. Davis
*Counsel for Appellee*

Law Office of Nicole Countryman, Phoenix
By Nicole Countryman
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Andrew M. Jacobs joined.

---

**C A T L E T T**, Judge:

¶1        Michael Alfred Fattouch ("Fattouch") appeals after a jury found him guilty on eight counts of sexual exploitation of a minor.  He argues the superior court erred by admitting other acts evidence, amending two counts in the indictment, and instructing the jury on concealment.  We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        The United States Department of Homeland Security ("Department") identified an IP address, located at Fattouch's apartment, as having been used to download child sexual abuse material ("CSAM").  The Department obtained a search warrant, went to Fattouch's apartment, and interviewed him.  During the interview, Fattouch told the Department he views adult pornography.  He explained he sometimes received "pop-ups," but he immediately deleted and shredded images he did not like.  Shredding a file, as compared to deleting a file, is a "[m]ore thorough" way of removing traces of it from a computer.  Fattouch admitted to being knowledgeable about computers and using peer-to-peer sharing software.  Fattouch said he used sharing software to download 70s sitcoms, but he also mentioned multiple key words typically used to search for CSAM.  He told the Department that if he downloaded CSAM, it was by accident.  The Department forensically searched Fattouch's computer and found CSAM.

¶3        In February 2024, a grand jury indicted Fattouch on eleven counts of sexual exploitation of a minor for possessing CSAM.  The State eventually agreed to dismiss three of those counts, reducing the number of counts to eight.

¶4        Before trial, the State notified the court and Fattouch that it intended to introduce other acts evidence under Arizona Rule of Evidence 404(b).  The State intended to introduce 24 additional CSAM videos, 11,970 thumbnail images of larger video files, and the names of other files found on Fattouch's computer.  The State said the purpose for introducing other

2

acts evidence was to "prov[e] knowledge, intent and absence of mistake or accident" because the evidence would show that Fattouch "intentionally . . . downloaded, viewed, and saved CSAM images, and then deliberately deleted them to prevent discovery of his illegal actions."

¶5            The court held an evidentiary hearing.  A Department employee testified he found CSAM videos and thumbnails in the unallocated space of Fattouch's computer.  The unallocated space is where a file ends up when a user attempts to delete it from their computer.  The employee then checked the names of files accessed through the peer-to-peer sharing software on Fattouch's computer.  Examples of the file names included "PTHC 2012 4yo LISA Fuck-and-Cum-in-Pussy," "Emma 4yo ukr (Real Good)," and "4YO Beautiful Blonde Gets in Mouth."  The employee found similar file names in Fattouch's internet search history.

¶6            Fattouch objected to the evidence, arguing it was unclear when the files were deleted and introducing over eleven thousand images would confuse the jury and be misleading, cumulative, and prejudicial.  The State argued the very act of deleting the files demonstrated Fattouch "possessed something he knew he shouldn't" and the file names "make it very obvious what is depicted[.]"  The State suggested it could clarify to the jury that Fattouch did not possess over eleven thousand unique images because the thumbnails were individual portions of four or five additional videos.

¶7            The superior court found the other acts evidence admissible to show Fattouch's intent to download and to prove that downloading was no mistake or accident.  The court prohibited the State from showing the jury any videos or images comprising other acts evidence.  But it allowed the State to elicit testimony about the file names found on Fattouch's computer.  The court said testimony clarifying that the thumbnails were constituent parts of "far fewer videos" would reduce any prejudicial effect.  The court explained that merely mentioning that the Department found 24 additional videos containing CSAM would not create unfair prejudice.  And the court found more broadly that "the probative value [of this evidence] would not be substantially outweighed by the danger of unfair prejudice."

¶8            At trial, to prove the eight counts against Fattouch, the State played five videos and displayed three images found on his computer.  A Department employee testified that he also recovered approximately 24 additional videos of CSAM and eleven thousand thumbnail files in the unallocated space on Fattouch's computer.  But the employee clarified the

thumbnails were "just pieces of larger videos" totaling around "five or six" in addition to the 24 "complete" videos found. He also testified that certain files on Fattouch's computer were deleted and shredded, which prevented him from determining when they were downloaded or deleted.

¶9 The employee also described other file names found on Fattouch's computer. The employee explained that he found 63 files in Fattouch's internet history with titles such as: "Lolita 6Yo raped both side.avi," "Pedomom – parents fuck both with 10Yo girl.avi," "Pedo pthc_13yo sex 9.avi," "[G] 2011 14yr fuck.mpg," "(PTHC) 2012 4yo LISA Fuck-and-Cum-in-Pussy.avi," "Emma 4yo ukr (Real Good).avi," "It's good forced sex MAP-NEW!! PTHC – Kids sex -- ptsc pthc kingpass hussyfan babyj jenny babyshivid vicky r@ygold 13yo 12yo 11yo 10yo 9yo 8yo 7yo 6yo 5yo 4yo 3yo 2yo.mpg." He also found 130 records in Fattouch's computer's "locally-accessed files," including file names such as: "(PTHC) 2012 4yo LISA Fuck-and-Cum-in-Pussy.avi," "(PthC) – 10yr daughter 30 mins(1).mpg," "4yo Kasandra deeptroat(1).mpg," and "Pthc 2012 4Yo Blowjob Sdc10676.avi."

¶10 At that point, Fattouch objected to listing the file names, arguing it was "cumulative" and "extremely prejudicial" when he was not charged with possessing those videos. The court overruled the objection, concluding the file names were admissible under Rule 404(b) to show "lack of mistake or accident" and "possession." The employee read two more file names, "2016 -01 BroSis – Hot 16yo girl sucks 5yo brother.avi," and "(PTHC) 2012 4yo LISA Fuck-and-Cum-in-Pussy.avi."

¶11 At the close of evidence, but before the court read the jury instructions or the parties presented closing arguments, the State moved to amend counts one and two in the indictment. The State requested to strike from count one the language "in file number 579586" and "engaging in sexual intercourse with an adult male." The State proposed that amended count one should say "on or about the 16th day . . . the defendant knowingly possessed a visual depiction located on his computer a digital video depicting a girl under 15 years of age, all in violation of statutes." The State also moved to amend count two to replace "engaging in sexual intercourse with an adult male" with "engaging in exploitive exhibition."

¶12 Fattouch objected to the amendments. The State argued Fattouch was on notice because the original count cited to A.R.S. § 13-3553, which lists the ways a defendant commits sexual exploitation of a minor. The proposed amendment just removed an incorrect file name and "superfluous language describing the conduct." After the court said it did

4

not understand Fattouch to be arguing a lack of notice, Fattouch's counsel clarified that he previously viewed the videos only enough "to know that it was child porn and that is illegal" but not enough to determine if the count's language was correct. The court granted both motions to amend.

**¶13**      The State also requested a concealment instruction, but Fattouch objected. Fattouch reiterated he deleted files when he observed something "disgusting" and "didn't want it on his computer." He argued that deleting files for that purpose is different than hiding evidence from law enforcement. The State disputed Fattouch's argument, saying Fattouch knew the files were illegal and deleting them was concealment. The court granted the instruction after concluding that the jury could reasonably infer that Fattouch attempted to conceal evidence by moving files to unallocated space (i.e. deleting them). The court instructed the jury as follows:

> In determining whether the state has proved the defendant guilty beyond a reasonable doubt, you may consider any evidence of the defendant's concealing evidence together with all the other evidence in the case. You may also consider the defendant's reasons for concealing evidence. Concealing evidence after a crime has been committed does not by itself prove guilt.

**¶14**      The jury found Fattouch guilty on all eight counts. The court sentenced him to 98 years in prison. Fattouch timely appealed; we have jurisdiction. *See* A.R.S. § 12-120.21(A)(1).

## DISCUSSION

### I.    Other Acts Evidence

**¶15**      Fattouch argues the court erred by allowing the State's other acts evidence because it was "unduly prejudicial." We review the superior court's decision admitting evidence for an abuse of discretion. *State v. Forde*, 233 Ariz. 543, 559 ¶ 42 (2014). "Abuse of discretion is 'an exercise of discretion [that] is manifestly unreasonable, exercised on untenable grounds or for untenable reasons.'" *State v. Wassenaar*, 215 Ariz. 565, 570 ¶ 11 (App. 2007).

**¶16**      Arizona Rule of Evidence 404(b) prohibits evidence of other acts or crimes if offered only "to prove the character of a person in order to show action in conformity therewith[.]" Ariz. R. Evid. 404(b)(1). But Rule 404(b)(2) allows other acts evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Ariz. R. Evid. 404(b)(2). The court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" Ariz. R. Evid. 403. "But not all harmful evidence is unfairly prejudicial" because "evidence which is relevant and material will generally be adverse to the opponent." *State v. Schurz*, 176 Ariz. 46, 52 (1993). When reviewing a trial court's ruling, we "must look at the evidence in the light most favorable to the proponent, maximizing its probative value and minimizing its prejudicial effect." *State v. Kiper*, 181 Ariz. 62, 66 (App. 1994).

¶17 Fattouch does not dispute that the State adequately proved he engaged in other acts or that the State offered those acts for a proper purpose. Citing *State v. Rix*, 256 Ariz. 125 (App. 2023), Fattouch argues only that admitting the "extreme quantity" of files, along with the file names, was "unduly prejudicial" and deprived him of a fair trial.

¶18 In *Rix*, the court allowed the State to show the jury for an extended period fifteen other acts images of "very disturbing" CSAM that were "highly dissimilar to those [the defendant] was charged with seeking." *Id.* at 134 ¶ 27. On appeal, we vacated the conviction, but we acknowledged the court could have admitted "representative images depicting content similar to that which Rix requested from the undercover persona" even if there was a "high degree of prejudice to [the defendant] inherent in such content." *Id.* at 134-35 ¶ 28 (cleaned up).

¶19 Unlike in *Rix*, the superior court here performed its gatekeeping function. The court prohibited the State from displaying any other acts images or videos. The court concluded that allowing the State to inform the jury that the Department found 24 CSAM videos—while prohibiting the State from displaying those videos—would not create undue prejudice. Rather than read the full list of file names found on Fattouch's computer, the court required the State to elicit testimony about those file names. The court required the State to clarify for the jury that the 11,970 thumbnails on Fattouch's computer were not individual images, but actually "far fewer videos." And the court instructed the jury it could not use other acts evidence "to determine the defendant's character or character trait, or to determine that the defendant acted in conformity with the defendant's character or character trait and therefore committed the charged offense."

¶20 In all these ways, the court allowed other acts evidence to serve its relevant purpose without causing undue prejudice. The court did not abuse its discretion. *See id.* at 134–35 ¶ 28 ("Had the evidence been

limited to . . . describing the nature and amount of . . . sexually exploitive material . . . the other-act evidence would certainly have been acceptably probative, even in relation to the high degree of prejudice . . . inherent in such content.").

## II.     Amending the Indictment

¶21         Next, Fattouch argues the court abused its discretion by amending counts one and two in the indictment. A "grand jury indictment limits the trial to the specific . . . charges stated[.]" Ariz. R. Crim. P. 13.5(b). But a charge may be amended, even when a defendant objects, "to correct mistakes of fact or remedy formal or technical defects." Ariz. R. Crim. P. 13.5(b). "The charging document is deemed amended to conform to the evidence admitted during any court proceeding." Ariz. R. Crim. P. 13.5(b).

¶22         "A defect [in an indictment] may be considered formal or technical when its amendment does not operate to change the nature of the offense charged or to prejudice the defendant in any way." *State v. Bruce*, 125 Ariz. 421, 423 (1980). If "the elements of one offense materially differ from those of another—even if the two are defined in subsections of the same statute—they are distinct and separate crimes." *State v. Freeney*, 223 Ariz. 110, 113 ¶ 16 (2009).

¶23         Count one originally said:

Count 1: SEXUAL EXPLOITATION OF A MINOR, CLASS 2 FELONY

On or about the 16th day of January, 2020, in the vicinity of 364 Rio Grande Court, #B, Bullhead City, Mohave County, Arizona, [Fattouch] knowingly possessed a visual depiction, in file #579586, located in on [sic] his computer, a digital video depicting a girl under 15 years of age, engaging in sexual intercourse with an adult male, all in violation of A.R.S. §§ 13-3553, 13-3551, 13-701, 13-702, 13-705, and 13-801, a Class 2 Felony.

The court amended count one by deleting "in file number 579586" and "engaging in sexual intercourse with an adult male."

¶24         Count two originally said:

Count 2: SEXUAL EXPLOITATION OF A MINOR, CLASS 2 FELONY

7

> On or about the 16th day of January, 2020, in the vicinity of 364 Rio Grande Court, #B, Bullhead City, Mohave County, Arizona, [Fattouch] knowingly possessed a visual depiction, in file #579634, located in on [sic] his computer, a digital video depicting a girl under 15 years of age, engaging in sexual intercourse with an adult male, all in violation of A.R.S. §§ 13-3553, 13-3551, 13-701, 13-702, 13-705, and 13-801, a Class 2 Felony.

The court amended count two by removing "engaging in sexual intercourse with an adult male" and replacing it with "engaging in exploitive exhibition."

¶25 Fattouch first argues that the court's amendments were impermissibly "substantive." We disagree. The amendments did not change the nature of the offenses charged against Fattouch. Subsection 13-3553(A) defines "sexual exploitation of a minor" as knowingly committing certain acts. At the time Fattouch was alleged to have committed his offenses, § 13-3553(A) listed two acts constituting the crime. *See* A.R.S. § 13-3553(A) (2008). Paragraph (A)(1) criminalized "[r]ecording . . . any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct." A.R.S. § 13-3553(A)(1) (2008). And paragraph (A)(2) criminalized "possessing . . . any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct." A.R.S. § 13-3553(A)(2) (2008). By the time Fattouch was indicted in 2024, the legislature had added a third act to the list. Paragraph (A)(3) prohibited "[p]ossessing . . . a child sex doll[.]" A.R.S. § 13-3553(A)(3) (2023).[1]

¶26 There was never any dispute that the State had charged Fattouch under (A)(2). At all times, including after the amendments, the indictment accused Fattouch of violating that paragraph. The State never accused Fattouch of *recording* a visual depiction of a minor engaging in prohibited conduct (thereby violating (A)(1)) or possessing a child sex doll (thereby violating (A)(3)). The State's case relied solely on Fattouch *possessing* CSAM, which only (A)(2) criminalizes.

¶27 And none of the amendments changed the elements the State had to prove under (A)(2). *See Freeney*, 223 Ariz. at 113 ¶ 16. That

---

[1] The legislature added a fourth act to § 13-3553(A) in 2025, but that amendment is not relevant here because it did not become effective until after Fattouch was charged and convicted. *See* 2025 Ariz. Sess. Laws, ch. 23 § 2 (1st Reg. Sess.) (H.B. 2115).

subsection required the State to prove beyond a reasonable doubt that Fattouch (1) knowingly, (2) possessed, (3) a visual depiction, (4) of a minor, (5) engaged in exploitive exhibition or other sexual conduct. *See* A.R.S. § 13-3553(A)(2). Removing "in file number 579586" and "engaging in sexual intercourse with an adult male" in count one and replacing "engaging in sexual intercourse with an adult male" with "engaging in exploitive exhibition" in count two did not change an element of the crimes. Whether a video on Fattouch's computer depicted exploitive exhibition or sexual conduct, counts one and two still charged an (A)(2) offense because sexual conduct includes sexual intercourse. *See* A.R.S. § 13-3551(11)(a). The court correctly acknowledged the videos showed "either exploitive exhibition or sexual intercourse." Fattouch's argument that the amendment was substantive fails.

¶28 Second, Fattouch argues the court's amendments deprived him of notice of the crimes with which he was charged. Fattouch argues the amendments prevented him from arguing that the videos did not depict what the State claimed. But Fattouch's trial counsel conceded that the State allowed him before trial to review each of the videos underlying the charges against Fattouch sufficiently "to know that it was child porn and that is illegal[.]" That concession placed the videos squarely within paragraph (A)(2), and there was never any suggestion in the amended indictment or otherwise that the State accused Fattouch of any other crime.

¶29 Fattouch also argues he did not receive proper notice because his counsel was permitted to view the videos underlying the State's eight charges only once at the prosecutor's office. But any limitation on counsel's ability to view the videos stems from their content (CSAM), not from the approved amendments to the indictment. "Rule 13.5(b) is limited to the procedural requirements for amending indictments." *See Freeney*, 223 Ariz. at 114 ¶ 25. It does not provide an avenue to challenge whether the State adequately disclosed evidence before trial. *See id.*

¶30 Finally, Fattouch has not shown the amendments prejudiced him. Fattouch's primary defense was that the CSAM at issue popped up on his computer, and he immediately deleted it and thus did not knowingly possess it. Fattouch does not explain how the amendments negatively impacted that defense. Again, all involved knew throughout trial that the State accused Fattouch of violating paragraph (A)(2). The State played the videos underlying counts one and two to the jury, and Fattouch did not dispute the videos contained CSAM. Fattouch instead focused his cross-examination and argument on the theory that he did not knowingly possess CSAM because he immediately deleted it when it popped up on his

computer. The amendments did not impact Fattouch's ability to cross-examine the Department employees—the State's two witnesses—to support his theory that he did not knowingly possess CSAM, or his ability to argue that defense to the jury. *Cf. State v. Johnson*, 198 Ariz. 245, 248–49 ¶¶ 12–13 (App. 2000) (prejudice existed because the defendant was prevented from challenging an inconsistent statement or conducting a proper cross examination).

**¶31**		Because amending the indictment did not change the elements of the criminal acts charged and Fattouch has not demonstrated insufficient notice or prejudice, his challenge fails. *See Freeney*, 223 Ariz. at 114–15 ¶¶ 27–28.

### III.		Concealment Instruction

**¶32**		Finally, Fattouch argues the court violated his due process rights by instructing the jury on concealment. *See supra* ¶ 13. Specifically, he argues that, although videos and images were in the unallocated space of his computer, that does not mean he deleted files or concealed evidence. "A party is entitled to a jury instruction on any theory the evidence reasonably supports." *State v. Brock*, 248 Ariz. 583, 590 ¶ 16 (App. 2020). We review the court's decision to give a concealment instruction for an abuse of discretion. *State v. Haywood*, 257 Ariz. 472, 480 ¶ 33 (App. 2024).

**¶33**		"[C]oncealment after a crime . . . bears on the issue of the defendant's consciousness of guilt." *State v. Weible*, 142 Ariz. 113, 116 (1984). The court may instruct on concealment when there is evidence supporting an "inference that the accused utilized the element of concealment[.]" *State v. Smith*, 113 Ariz. 298, 300 (1976).

**¶34**		We have explained that a concealment instruction does not create a due process violation when it includes permissive, not mandatory, language that the jury "may consider any evidence" and that concealment alone is insufficient to prove guilt. *State v. Foster*, 258 Ariz. 472, 487 ¶¶ 61–63 (App. 2024). Here, the court's concealment instruction included both statements. So the instruction did not violate due process.

**¶35**		We also reject Fattouch's argument that there was insufficient evidence for a concealment instruction. Fattouch admitted he was knowledgeable about computers, knew how to shred files, and had done so in the past. One of the Department employees testified he found CSAM with its metadata shredded in the unallocated space on Fattouch's computer, so the Department could not determine when the files were downloaded or deleted. Although Fattouch presented contrary evidence

explaining why he deleted and shredded files, there was reasonable evidence supporting a concealment instruction.

## CONCLUSION

¶36 We affirm Fattouch's convictions.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR